UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIC BATTLES,

        Plaintiff,

v.                              CASE No. 8:15-CV-339-T-33TGW

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

_____

## REPORT AND RECOMMENDATION

        The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[1]  Because the decision of the Commissioner of Social Security does not evaluate adequately the functional limitations resulting from the plaintiff's severe impairment of chronic headaches, I recommend that it be reversed, and the matter remanded for further consideration.

I.

        The plaintiff, who was forty-five years old at the time of the administrative hearing and who has the equivalence of a high school

_____

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.  See also Local Rule 6.01(c)(21).

education, has worked as a communications electrical supervisor, line repairer, and a luggage porter (Tr. 96, 97, 127). He filed a claim for Social Security disability benefits, alleging that he became disabled due to a stiff neck with chronic pain, prior AGF cervical fusion at C6-7, severe depression with anxiety and panic attacks, sleep apnea, AGHD (adult onset growth hormone deficiency), chronic prostatitis, GERD/acid reflux, chronic sore throat, and headaches (Tr. 286). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of disorders of the spine (status post 1999 C6-7 fusion), obstructive sleep apnea, chronic headaches, affective disorder, and anxiety-related disorder (Tr. 74). She concluded that, with these impairments, the plaintiff retained the residual functional capacity to perform (Tr. 76):

> light work as defined in 20 CFR 404.1567(b) except with no more than occasional bilateral overhead reaching; no concentrated exposure to extreme heat, cold, vibrations, hazards (machinery, heights, etc.), or pulmonary irritants (dust, fumes, odors, gases, poor ventilation). The claimant is limited to no more than simple, routine, repetitive tasks involving no more than occasional interaction

with supervisors, co-workers, and the general
public.

The law judge determined that these limitations precluded the plaintiff from

returning to past work (Tr. 82).  However, based upon the testimony of a

vocational expert, the law judge decided that the plaintiff could perform other

jobs that exist in significant numbers in the national economy, such as an

assembler of electrical accessories, I; marker; and order caller (Tr. 83).  The

plaintiff was therefore found to be not disabled (id.).  The Appeals Council

let the decision of the law judge stand as the final decision of the

Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a

claimant must be unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which

... has lasted or can be expected to last for a continuous period of not less

than twelve months."  42 U.S.C. 423(d)(1)(A).  A "physical or mental

impairment," under the terms of the Social Security Act, is one "that results

from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence.  <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff challenges the law judge's decision on several grounds (Doc. 11).  The plaintiff's first argument shows deficiencies in the law judge's analysis and warrants reversal.

The plaintiff contends that the law judge did not consider properly the effect of each of his severe impairments on his ability to work (<u>id.</u>, p. 2).  In particular, he argues meritoriously that the law judge failed to articulate any functional limitation caused by his severe impairment of chronic headaches (<u>id.</u>, p. 4)

The plaintiff testified at the administrative hearing that he has headaches daily, which he described as "a throbbing, intense ache" (Tr. 122). He stated that, consequently, he is limited in the amount of time that he can read, drive, and use a computer (Tr. 114, 119, 124-25; see also Tr. 315). The plaintiff also averred that he takes several naps daily due to headaches and other ailments (Tr. 113, 124).

The record shows that the plaintiff consistently complained of headaches to health providers (see, e.g., Tr. 495, 534, 774, 780). He was treated by a neurologist for chronic daily headaches with medications and IV therapy, which were purportedly ineffective (see, e.g., Tr. 652-653, 663-664).

The law judge found that, among other things, the plaintiff had a severe impairment of chronic headaches (Tr. 74). This means that the plaintiff suffered from headaches that significantly limited his physical or mental ability to do basic work activities. See 20 C.F.R. 404.1520(c); 404.1521; Raduc v. Commissioner of Social Security, 380 Fed. Appx. 896, 898 (11th Cir. 2010) ("By definition, a severe impairment limits significantly a claimant's ability to do basic work activities."). The law judge, furthermore, noted that the plaintiff's severe impairments "cause more than a minimal limitation in [his] ability to perform basic work activities" (Tr. 74).

There is no indication, however, that in assessing the plaintiff's residual functional capacity any limitations from chronic headaches were included. The law judge determined that the plaintiff retained the physical residual functional capacity to perform light work, with occasional overhead reaching, and no concentrated exposure to environmental or pulmonary irritants, temperature extremes or hazards (Tr. 76). The law judge also restricted the plaintiff to simple, routine, repetitive tasks involving no more than occasional interaction with supervisors, co-workers and the general public "to accommodate his mental health limitations" (Tr. 76, 80). Thus, there is nothing in that finding that appears to include a significant limitation due to chronic headaches. Therefore, the law judge failed to consider, as she was required to do, the combined effects of all of the plaintiff's impairments, including specifically the plaintiff's chronic headaches. See Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987); Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); 20 C.F.R. 404.1529(c)(3)(ii) (the law judge must consider the duration, frequency and intensity of the symptoms).

The law judge merely states in a conclusory manner that "limitations related to the claimant's severe impairments have been allowed for in the residual capacity" (Tr. 80). However, the law judge did not identify

what work restrictions were included to accommodate the plaintiff's chronic headaches and, as indicated, it is not apparent from the residual functional capacity. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (the law judge must make specific and well-articulated findings as to the effect of the impairments in determining the plaintiff's residual functional capacity).

Notably, the physical residual functional capacity essentially matches the opinion of the non-examining reviewing physician (compare Tr. 76 with Tr. 572-575), who opined that the plaintiff's headaches were "not [a] severe" impairment and there was "no LOA" (limitation on activity) due to headaches (Tr. 576). The law judge stated that she gave the reviewer's opinion of the plaintiff's residual functional capacity "great weight" (Tr. 81), but she clearly rejected the reviewer's opinion that the headaches were not a severe impairment, since she expressly found that they were.

The Commissioner, in her response, does not identify any limitation in the residual functional capacity that accommodates the plaintiff's chronic headaches. Rather, she argues, generally, that the law judge's findings are supported by the evidence, and emphasizes that the law judge rejected the plaintiff's allegations of debilitating headaches (Doc. 12, pp. 11-12).

The law judge was clearly skeptical of the plaintiff's allegations of disabling headaches (Tr. 78-79). However, while the law judge rejected that the plaintiff's headaches were debilitating, she concluded that they were severe and, therefore, "cause[d] more than a minimal limitation in the claimant's ability to perform basic work activities" (Tr. 74). Consequently, the law judge needed to articulate what the plaintiff's significant limitations were from that impairment, or if there were not any such limitations, state that the headaches were a non-severe impairment. The law judge cannot have it both ways. In other words, she needed to reconcile the inconsistency in her findings.

Moreover, this is not a harmless error because the court, as a result, cannot determine whether the residual functional capacity included appropriate limitations on the plaintiff's ability to work due to his chronic headaches and, concomitantly, whether the law judge's findings that he could perform the representative jobs of assembler, marker, and order caller are supported by substantial evidence.

In sum, the law judge's finding that the plaintiff's chronic headaches were a severe impairment establishes that he had work-related limitations due to headaches. However, those functional limitations are not

apparent from the residual functional capacity, nor does the law judge identify them in her decision. Therefore, as this court has concluded in other cases that presented the same issue, it is appropriate to remand this matter for further consideration. See Reis ex rel. Reis v. Astrue, No. 8:11-CV-2027-T-TGW, 2012 WL 3231092 at *4 (M.D. Fla. Aug. 6, 2012); Towner v. Astrue, 8:11-CV-2258-T-30TBM, 2012 WL 6699627 at *6 (M.D. Fla. Dec. 5, 2012) ("beyond that finding [of severe headaches] there is no further indication by the ALJ as to limiting effects of the condition" and "the court should [not] be left to speculate about the functional impact of Plaintiff's migraine headaches or whether such was fairly a part of the RFC assessment made by the ALJ").

Although this conclusion is sufficient to resolve this case, it is additionally noted that the treatment of the plaintiff's sleep apnea is not well explained in the decision. The plaintiff testified that, due to sleep apnea, he had restless sleep and, consequently, he was tired and fatigued during the day, and unable to concentrate (Tr. 120, 121).

Although the law judge rejected that the plaintiff's sleep apnea was disabling,[2] she concluded that it was a severe impairment (Tr. 74).

---

[2]The law judge rejected the plaintiff's allegations of disabling sleep apnea because, among other reasons, "[m]edical treatment records fail to document any consistent or ongoing complaints of excessive daytime sleepiness or the frequency and duration of

Consequently, the law judge needed to identify the significant limitations it imposed on the plaintiff's physical or mental ability to work. <u>See</u> 20 C.F.R. 404.1521.

However, there is no clear indication of the limitations imposed by this impairment. Arguably, the limitation to avoid "concentrated exposure" to hazards could be viewed as designed to guard the plaintiff from sleepiness caused by sleep apnea. However, if the law judge accepted the plaintiff's testimony that sleep apnea causes some daytime sleepiness, she should clarify the extent to which, if any, that sleepiness affects the plaintiff's ability to persist at tasks and to concentrate. While it is not necessary to decide whether this deficiency would warrant a remand, the Commissioner would be well advised to address this issue more fully in order to avoid a potential challenge in the future.

---

napping reported by the claimant" (Tr. 79). The plaintiff argues, however, that the record is replete with his complaints to medical providers of fatigue and daytime sleepiness (Doc. 11, pp. 3-4).

A review of the record shows that the plaintiff complained regularly to his mental health counselor about poor sleep, fatigue, and low energy (Tr. 531, 534, 535, 538, 542, 618, 771, 779, 781). The plaintiff also reported to medical doctors throughout the alleged disability period of fatigue and not sleeping well (Tr. 417, 486, 596, 597, 598, 602, 609, 676, 693, 696, 709, 788).

IV.

For the foregoing reasons, the decision of the Commissioner is deficient. I, therefore, recommend that the decision be reversed and the matter remanded for further consideration.

Respectfully submitted,

THOMAS G. WILSON
DATED: MAY 2⁴, 2016       UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.